## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| HAROLD CARTER, individually and on behalf of all other similarly situated, | ) ) ) | |
| Plaintiff, | ) | Case No.: 1-24-cv-02007-JPH-MJD |
| | ) | |
| v. | ) | |
| | ) | |
| SELENE FINANCE, LP | ) | |
| | ) | |
| Defendant. | ) | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Harold Carter ("Carter" or "Plaintiff"), on behalf of himself and all others similarly situated, files this First Amended Class Action Complaint under Federal Rule of Civil Procedure 23 against Selene Finance, LP ("Selene" or "Defendant") and states as follows:

### NATURE OF THE ACTION

1.      This is a consumer protection action brought by Plaintiff and others similarly situated to obtain redress from Selene's systematic use of unlawful and unfair debt collection practices to collect upon residential consumer mortgage loans.

2.      This action is brought under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*., which was enacted to eliminate abusive debt collection practices by debt collectors, and the Indiana Deceptive Sales Act ("DCSA"), IC § 24-5-0.5-3, *et seq.,* that prohibits unfair deceptive acts from businesses such as Selene.

3.      Specifically, Selene sends borrowers form letters alleging that the borrowers are in default on their mortgages and that the failure to immediately make a ***full and complete*** payment of all arrearages will result in immediate acceleration of their loan.

1

4.      The form letter has been distributed across the nation, including a form letter sent out to citizens and residents of the state of Indiana (hereinafter referred to as the "IN Final Letter(s)"). A copy of the first page of an IN Final Letter materially similar to those alleged to have been sent to all Indiana putative class members is attached as **Exhibit A** to this Amended Complaint.

5.      The IN Final Letters include the below representation:

> The total amount you must pay to cure the default stated above must be received by 05/21/2024. Failure to cure the default on or before the date specified may result in acceleration of the sums secured by the Security Instrument, sale of the property and/or foreclosure by judicial proceeding and sale of the property.

6.      Upon information and belief, the second and third pages of the IN Final Letter make representations that if a partial payment is made prior to the date specified, Selene may proceed to foreclosure and the default will not have been cured.

7.      None of the foregoing statements are consistent with a) Selene's internal policies regarding acceleration and foreclosure.

8.      On May 2, 2024, Selene had its deposition taken pursuant to Fed. R. Civ. P. 30(b)(6). Although Selene has designated swaths of this deposition as "Confidential," Selene <u>unequivocally</u> confirmed that its actual policy is to ***never*** accelerate a loan that is less than 120-days delinquent.

9.      The following is a relevant, non-redacted portion of Selene's deposition as it pertains to acceleration:

Q: And for Selene, acceleration doesn't come until the lawyer gets the file and then prepares the lawsuit and files it, correct?

A. Yes.

Q. So acceleration for Selene is going to be after 121 days -- strike that. The acceleration for Selene is going to be after 121 days delinquent?

A. After. We shoot for 10 to 15 days after the 121st day, so around 130, 135, somewhere in there. We expect our lawyers to have lawsuits filed and reviewed.

Q. That's -- yeah, that's the goal. The goal is within 10 to 15 days for the lawyer to file the lawsuit after it's referred to the lawyer?

A. Yes, sir.

Q. But even if the lawyer was really on their A game and got it done in one day, it would always be after 121 days delinquent?

A. Yes.

Q. Okay. Has that been the case for the entire relevant time period?

A. Yes.

30(b)(6) Deposition of Selene Finance, L.P. dated May 2, 2024 ("Selene Dep.") 56:17-57:15, excerpts are attached hereto as **Exhibit B**.

10.    Although this deposition was taken in connection with a case pending in Florida, upon information and belief, Selene's policies and procedures with respect to acceleration are materially identical for Indiana consumers.

11.    This lawsuit arises under the FDCPA and DCSA. It is not based upon contractual principles or alleged breaches of Plaintiff's mortgage or promissory note. Upon information and belief, there is nothing in Plaintiffs mortgage that specifically prohibits or restricts the conduct at issue in this lawsuit. Nor does this suit implicate the rights of Plaintiff *vis a vis* its lender. Instead, Plaintiff alleges that representations made in the IN Final Letter constitute a material misstatement of Defendant's *intentions* alone, with respect to its ability and intention to accelerate and to foreclose on Plaintiff and similarly situated putative class member homes.

12.    The IN Final Letter sent by Selene to Carter and others similarly situated is plainly a false and misleading threat of acceleration and foreclosure designed to intimidate borrowers into

making payments to Selene that are beyond their means and beyond what is necessary to avoid acceleration and save their homes from foreclosure.

13.     This class action is filed pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who are members of the Class (defined below) to whom Selene has sent or will send an IN Final Letter during the applicable Class Period (defined below).

## JURISDICTION AND VENUE

14.     The foregoing allegations are hereby incorporated by reference as if fully set forth herein.

15.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 in that this action arises under, inter alia, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*

16.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332(d)(2) because these claims form part of a class action in which the amount in controversy exceeds the sum of $5,000,000.

17.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 in that the state law allegations contained herein are so related to the claims asserted under 15 U.S.C. § 1692 *et seq.* over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18.     Divisional assignment, and Venue, is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events giving rise to the claims asserted herein occurred within this District.

## PARTIES

19.     Plaintiff is a citizen and resident of Marion County, Indiana.

20.     Selene is a corporation organized and existing under and by virtue of the laws of the State of Texas with a principal place of business in Coppell, Texas.

21.     Selene is regularly engaged in the business of collecting debt in the State of Indiana.

22.     Upon information and belief, Selene is not a bank, trust company, or lending institution.

23.     Selene's employees, affiliates, directors, agents, and attorneys act under the direction and supervision of Selene and, therefore, Selene is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of respondent superior.

## FACTUAL ALLEGATIONS

24.     Carter is the owner of a residential home located at 6235 Long Channel Lane #707, Indianapolis, Indiana 46268.

25.     On or about September 25, 2015, Plaintiff obtained a mortgage subject to a Security Instrument with the original "Lender," Plaza Home Mortgage, Inc. for the purchase of his residence.

26.     Lenders, often immediately upon the closing of the loan, will package pools of loans to be sold as a security. When that occurs, the owner of the Loan is generally a corporate entity, often referred to as a special purpose entity or special purpose vehicle (an "SPV"). The sole purpose of an SPV in this context is to acquire and hold a portfolio of loans which can be transferred among investors.

27.     The SPV will often 'assign' the ownership rights to a related corporate entity or trust for the purpose of *acting* on behalf of the owner because the successor in interest SPV does not act; it only exists to hold a portfolio of loans.

5

28.     In Plaintiff's situation: (1) his original Lender was Plaza Home Mortgage, Inc.; and (2) Freddie Mac is an SPV and is the successor in interest of Plaza Home Mortgage, Inc.

29.     The servicing of a mortgage loan is separate from the ownership of a mortgage loan. Although lenders sometimes service loans themselves, many lenders utilize a mortgage servicing company to service the debt as the "Loan Servicer." This is particularly common where loans are pooled and sold to an SPV following the closing of the loan, like in Plaintiff's situation.

30.     Loan Servicers have a contractual relationship with the Lender to perform their primary responsibilities of collecting mortgage payments from Plaintiff and distributing those payments to, *inter alia*, the Lender or other investors, tax authorities, and insurance companies.

31.     The ownership rights to a Mortgage can be sold, transferred, or assigned without notice to the borrower and, when this occurs, the Loan Servicer may change. Plaintiff's Mortgage, for example, specifically contemplates this possibility:

> The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.

**Exhibit C**, ¶ 20.

32.     Loan Servicers acquire the servicing rights to an SPV's portfolios of loans through a Master Servicing Agreement with the owner or its assigns. Those rights are typically for a definite term. And even if the Lender sells or assigns the loan to another party, the rights of the Loan Servicer continue after the loan is assigned to another lender.

33.     Plaintiff's mortgage allows for this separation between the two rights and references the possibility of a Loan Servicer in the following clause:

> If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

*Id*.

34.     Oftentimes, Loan Servicers will have a contractual relationship with another entity to actually perform the Loan Servicers' servicing responsibilities (referred to as a "Loan Sub-Servicer.")

35.     Selene, for example, acts as a Loan Sub-Servicer for third-party Loan Servicers with respect to the vast majority of the mortgage loans for which it provides mortgage loan servicing. Generally, as a Loan Sub-Servicer, Selene would not have a contractual relationship with the Lender, its successor in interest, its assigns, or the borrower.

36.     The rights that the Loan Servicers are provided are inherently limited by the contract with the Lender—the Loan Servicer is not a successor in interest with respect to the Lender nor is the Loan Servicer assigned all rights of the Lender. In other words, the Loan Servicer is not "stepping into the shoes of the Lender" like successors or assigns.[1]

37.     For example, when a borrower falls behind on their mortgage and ultimately requires the initiation of a foreclosure action, the Loan Servicer must be provided a power-of-attorney from the Lender.

38.     The only rights the Loan Servicer has without subsequent contractual authority from the Lender are explicitly described in the Mortgage documents.

39.     Loan Servicers simply provide services to the Lender in the same way that a Loan

---

[1] Moreover the rights of the Loan Sub-Servicer are inherently limited by the specific terms of the contract with the Loan Servicer.

Sub-Servicer—like Selene—performs a service for the Loan Servicer.

40.     Upon information and belief, Selene acquired the servicing rights for Carter's mortgage on or about March 1, 2024 from JPMorgan Chase, N.A.

41.     Paragraph 13 of the Mortgage confirms that the "covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender." **Exhibit C**, ¶ 13.

42.     When a mortgage loan is assigned, sold, or transferred, a notification is sent to the borrower that identifies certain terms of such transfer (the "Notification of Assignment, Sale or Transfer.")

43.     A copy of the Notification of Assignment, Sale or Transfer that was, upon information and belief, materially similar to the Notification of Assignment, Sale or Transfer that was sent to Plaintiff is attached hereto as **Exhibit D**.

44.     The Lender is authorized to utilize any number of third-parties other than Loan Servicers to perform services on their behalf. For example, the Lender is authorized to assign the rights to perform property inspection for the purpose of protecting the Lender's interest in the subject property. **Exhibit C**, ¶ 14.

45.     Selene is not a successor nor assign of the Lender—it is simply a Loan Servicer or a Loan Sub-Servicer.

46.     The ownership rights to Plaintiff's mortgage are wholly separate from the servicing rights that Selene has.

47.     Selene is not the Lender nor is Selene the successor or assign of the Lender.

48.     Selene does not own the mortgage nor is Selene a successor or assign of the entity that owns the mortgage.

49.    The notice and cure provision of Plaintiff's mortgage does not apply because Selene is not a successor or assign of the entity that owns the mortgage.

50.    Requiring Plaintiff to abide by the notice and cure provision would be futile.

51.    Upon information and belief, Selene earns money based upon a percentage of the funds that it collects from consumers' mortgage payments as well as through the assessment of late fees and other penalties.

52.    Upon information and belief, many of the mortgage loans that Selene services, including the named Plaintiff and putative Class members, are delinquent or are in default when Selene acquires servicing rights.

53.    Other loans become delinquent during the course of Selene's servicing of the loans.

54.    Upon information and belief, when loans for its customers become more than 45 days delinquent, Selene sends a letter that it refers to as a "Final Letter" to coerce and intimidate the borrower into paying the enter default amount of the loan.

55.    An exemplar IN Final Letter, including only the first page sent to Plaintiff, is attached hereto as **Exhibit A**.

56.    The IN Final Letter specifically states: "To cure this default, you must pay all amounts due under the terms of your Note and Security Instrument."

57.    The IN Final Letter further states: "The total amount you must pay to cure the default stated above must be received by [date (35 days from date of the Final Letter)]." This is a materially false and misleading statement because a borrower has additional time to cure the default.

58.    The IN Final Letter also states: "Failure to cure the default on or before the date specific may result in acceleration of the sums secured by the Security Instrument, sale of the

property and/or foreclosure by judicial proceeding and sale of the property." This is a materially false and misleading statement because the failure to cure the default on or before the date specified will <u>never</u> result in acceleration of the sums secured by the Security Instrument, sale of the property and/or foreclosure by judicial proceeding and sale of property.

59.     Selene utilized the IN Final Letters to make false threats to accelerate borrowers' loans.

60.     The IN Final Letters create a false sense of urgency by threatening to accelerate the entire indebtedness of a consumer's loan if the total amount is not received on or before the date which is 35 days from the date of the Final Letter when, upon information and belief, a borrower need only keep their loans less than 120 days less than 120 days past due to avoid acceleration and foreclosure.

61.     If a borrower fails to meet the deadline outlined in the Final Letters, nothing happens at all.

62.     It is only when Selene initiates the foreclosure process—which never occurs earlier than at least 120 days delinquency—that the specific mortgage loan is triggered for acceleration.[2] As such, Selene <u>never</u> accelerates a mortgage loan until it is least 120 days delinquent.[3]

63.     Essentially, upon information and belief, Selene is making a false threat.

64.     Put simply, Selene does not accelerate loans in the manner threatened by its IN Final Letter in the usual course of business.

65.     The IN Final Letters misrepresent the conditions under which Selene intends to accelerate loans and materially deceive consumers into believing their loans will or could be

_____

[2] (**<u>Exhibit B</u>** (56:17-57:15)).
[3] (*Id.* (126:13-15)).

accelerated if they fail to fully cure their default prior to the stated date which is 35 days from date of the IN Final Letter.

66.     Plaintiff's claims do not arise from Selene's actions pursuant to the Security Instrument nor does Plaintiff contend that Selene breached the terms of the Security Instrument or breached any duty owed pursuant to the Security Instrument. In fact, the IN Final Letter *technically* complies with the Security Instrument—and Plaintiff is not bringing a breach of contract or similar claim for any alleged breach of any provision of her Security Instrument.

67.     The IN Final Letters cause borrowers, including Plaintiff and putative Class members, to believe that they are at risk of acceleration and foreclosure if all arrearages to Selene are not paid within the time period identified in the IN Final Letter.

68.     The IN Final Letters cause borrowers to believe that they will lose their homes if they do not become current on their loan within the time period identified in the Letter.

69.     The IN Final Letters misrepresent Selene's intentions and present consumers with a false ultimatum that they satisfy all arrearages within the false deadline identified in the IN Final Letter, or face acceleration and ultimately foreclosure.

70.     The Final Letters are materially misleading in that they threaten consumers, including the named Plaintiffs and putative Class members, with acceleration and foreclosure when Selene has neither the present intent to undertake such actions.

71.     The IN Final Letters instruct borrowers that, if they want to ensure their mortgage is not accelerated and home is not foreclosed upon, they must pay a larger share of the amount owed than what is actually required.

72.     The IN Final Letters also encourage borrowers to contact Selene to engage in loan workout or loss mitigation plans if they cannot meet the IN Final Letter's deadline. This

encourages borrowers to renegotiate their loan terms to their detriment based upon the false threats of the potential for immediate foreclosure in the Letters.

73.     Not only are Selene's threats of acceleration and foreclosure unless full payment is received by the Deadline false and fail to accurately describe Selene's rights, Selene—in accordance with its own policies—never accelerates or forecloses if a consumer brings the loan less than 120 days past due.

74.     In actuality, the 35-day deadline threatening acceleration and foreclosure does not trigger anything at all.[4] Borrowers who pay nothing through at least 120 days of delinquency are never at risk of acceleration or foreclosure.[5]

75.     As an example of the true timeline:

A loan due on January 1 would be sent a Final Letter around February 14 (45 days past due) with a March 17 deadline requiring a borrower to "cure their default". Any payment prior to March 17 sufficient to cover the January payment would leave the loan no more than 45 days past due on March 17 (because the loan would be 45 days past due for the February payment). No payment would leave the loan only 80 days past due. Thus, a borrower must fail to pay anything for the remainder of March and all of April before Selene's threats become viable, and any payment sufficient to cover January would subtract 30 days from the number of days past due.

76.     The Final Letters do not notify borrowers that their loan will not be accelerated and they will not be at risk of foreclosure if a partial payment is made that brings the loans to less than 45-days delinquent, or that Selene will never accelerate until the loan is at least 120-days delinquent. In other words, Selene does not accelerate loans or foreclose in the manner threatened in the Final Letters. Rather, the expiration date contained in the Final Letters is completely meaningless—designed only to deceive and scare borrowers into paying more money on a faster

---

[4] (*Id.* (113:03-114:05)).
[5] (*Id.* (90:15-24; 118:12-25)).

timeline than necessary or otherwise modifying their actions.

77.     The empty threats of acceleration and foreclosure contained within the IN Final Letter are designed to scare and intimidate individuals into paying delinquent amounts.

78.     The empty threats of acceleration and foreclosure contained within the IN Final Letter have the potential of causing individuals, including the named Plaintiff and putative Class members, to send additional money to Selene that, absent the false and misleading statements, they could have utilized on other necessary expenditures, including food and utility payments.

79.     The empty threats of acceleration and foreclosure make it impossible for a consumer to make a rational decision in response to the IN Final Letter because it threatens immediate, irreversible consequences.

80.     The empty threats of acceleration and foreclosure are designed to scare consumers into making payments they otherwise may not.

81.     Selene understands and knows the frightening and unnerving nature of the misrepresentations utilized in its IN Final Letters.

82.     Upon information and belief, the IN Final Letters were knowingly, intentionally, and purposefully crafted in such a way to frighten and intimidate consumers into paying money to Selene.

83.     Plaintiff and putative Class members received numerous IN Final Letters substantially identical to **Exhibit A**.

84.     Upon information and belief, each Class member has received one or more IN Final Letter.

85.     Each IN Final Letter constitutes a separate violation of the FDCPA.

86.     Plaintiff is not challenging Selene's authorization to service the debt or assess any fees pursuant to the Mortgage nor is Plaintiff asserting that Selene's debt collection activities giving rise to Plaintiff's claims derive from an incorrect or unlawful interpretation of any term or provision therein. Plaintiff's claims pertaining to Selene's use of the Final Letters are wholly unrelated to any violation of any mortgage provision.

87.     None of the issue brought or claims made by Plaintiff relate to the Mortgage—only to Selene's debt collection activities, all of which are outside the scope of the Mortgages. Instead, Plaintiff's claims arise solely out of obligations imposed by the FDCPA, and the DCSA.

88.     None of the issues or claims made by Plaintiff arise out of Selene's duties to send correspondence pursuant to any contractual obligations—instead, the issues and claims asserted by Plaintiff arise out of Selene's unlawful policies and procedures with respect to the false and misleading threats in the Final Letters.

89.     In other words, Plaintiff's claims are independent from his Mortgage. The Mortgages of Plaintiff and putative class members are simply irrelevant to Plaintiff's claims.

90.     As a result of the foregoing, Plaintiff and putative Class members have experienced anxiety, stress, anger, frustration, and mental anguish which is fairly traceable to their receipt of IN Final Letters containing the false ultimatums which, *inter alia*, caused informational harms, violated substantive rights to be free from unfair and abusive debt collection communications, and misled Plaintiff and putative Class members with regard to the amount of money that had to be paid and when it needed to be paid to save their homes from acceleration and/or foreclosure.

91.     Upon information and belief, Selene acquired the servicing rights for Plaintiff's mortgage while it was in a state of default.

92.     When Plaintiff became more than 45 days delinquent, Selene sent him an IN Final Letter to coerce and intimidate him into paying the entire default amount of the loan.

93.     A true and accurate copy of the first page of Mr. Carter's Final Letter is attached hereto as **<u>Exhibit A</u>**.

94.     Selene sent Plaintiff an IN Final Letter within the applicable statutes of limitations.

95.     The IN Final Letter made a false threat to accelerate Plaintiff's loan, created a false sense of urgency by threatening acceleration of the entire indebtedness, and misled Plaintiff regarding what had to be paid and when it needed to be paid to save him home from acceleration and/or foreclosure, which caused him emotional distress and informational harm by violating him substantive rights to be free from unfair and abusive debt collection communications.

96.     Upon receipt of Selene's IN Final Letter, Plaintiff withdrew funds from his investments to pay the full amount owed according to Selene's letter.

97.     Plaintiff paid the full amount because he feared acceleration and/or foreclosure as stated in the IN Final Letter should he fail to do so.

98.     Plaintiff's credit score was negatively affected as a result.

## <u>CLASS ALLEGATIONS</u>

99.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

100.    Pursuant to Federal Rules of Civil Procedure 23, Plaintiff brings this action on behalf of a Class tentatively defined as follows:

> All residential mortgagors who reside in the State of Indiana whose mortgage servicing was transferred to Selene while in a state of default, to whom Selene sent a letter substantially similar to the Indiana Final Letter attached as Exhibit A to this Class Action Complaint, in that the letter warned of immediate acceleration of the loan and/or commencement of foreclosure proceedings, upon less

than full payment of the "amount due" or "default amount," dated within two years preceding the date of filing of this Class Action Complaint.

101.    The individuals protected by the Classes are limited by the applicable statute of limitation prior to the filing of this Complaint, through the date of final resolution of this matter.

102.    Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Selene and any entity in which Selene has a controlling interest in Selene and its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from the Class.

103.    *Numerosity*: Plaintiff is unable to provide a specific number of members in the Class because that information is solely in the possession of Selene. However, the exact number of Class members, including the names and addresses of all Class members, will be easily ascertained through a review of Selene's business records. Upon information and belief, each Class contains at least a thousand consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable.

104.    *Commonality*: Common questions of law and fact predominate over any individual issues that may be presented, because Selene has a pattern, practice and policy of communicating with all borrowers in a materially identical manner. Selene, in seeking to collect the mortgage loan debt of Plaintiff and the putative Class, sent materially identical letters to Plaintiff and putative Class members. Each and every member of the proposed Class is subject to Selene's policies and procedures.

105.    *Typicality*: The claims of Plaintiff are typical of the claims of the proposed Classes and all are based on the same facts and legal theories, as all such claims arise out of Selene's conduct.

106. *Adequate Representation*: Plaintiff is an adequate representative of the Classes in that Plaintiff has no antagonistic or conflicting claims with any other member of the Classes. Plaintiff has also retained counsel experienced in the prosecution of complex class actions, specifically including experience with consumer class actions.

107. Neither Plaintiff nor Plaintiff's counsel has any interest that might cause Plaintiff not to vigorously pursue this action. Plaintiff is aware of the responsibilities to the putative Class and has accepted such responsibilities.

108. *Predominance and Superiority*: The Classes are appropriate for certification because questions of law and fact common to the members of the Classes predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court or courts in other jurisdictions would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

109. Further, Selene has acted and refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final injunctive and declaratory relief with respect to the Classes as a whole.

**FIRST CAUSE OF ACTION**
**(Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*.)**

110.    The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

111.    Selene is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692(a)(6), because Selene obtained the servicing rights to Plaintiff's mortgage while in a state of default.

112.    Plaintiff and all members of the FDCPA Class are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692(a)(3), since they are natural persons allegedly obligated to pay a consumer debt.

113.    At all material times, Plaintiff's debt and the debts of the FDCPA Class Members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692(a)(5).

91.    Dunning letters such as the IN Final Letter attached as **Exhibit A** hereto are to be evaluated by the objective "least sophisticated consumer" standard.

92.    FDCPA 15 U.S.C. § 1692(e) states in part:

> A debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
>
> (5)    The threat to take any action that cannot legally be taken or that is not intended to be taken.
> . . .
>
> (10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

93.    Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it used false representations and deceptive means to collect or attempt to collect the Debt and threatened action it did not intend to take.

18

94.     Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

95.     Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(e) in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

96.     Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it misrepresented its intentions and presented Plaintiff and other consumers with a false ultimatum that they must pay all arrearages within the false deadline identified in the IN Final Letters, or face immediate acceleration and initiation of foreclosure proceedings.

97.     Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(e), in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures under the terms threatened in its IN Final Letter.

98.     Selene's violations of 15 U.S.C. § 1692(e) were material, *inter alia*, because the IN Final Letter misled consumers about information necessary to permit them to determine their best course of conduct; created a substantial risk of causing homeowners to make less than optimal decisions in managing their finances; and increased and foreseeably increased the anxiety of homeowners regarding the risk of immediate acceleration or commencement of foreclosure proceedings.

99.     Moreover, Congress has expressly determined that Selene's violations are material by specifically designating that threats to take actions that the debt collector does not intend to take are an unfair collection practice and a violation of the FDCPA.

100.     Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(e) by using false representations and deceptive means, including false threats of acceleration and commencement of foreclosure proceedings, and the IN Final Letters are therefore illegal.

101.     Under 15 U.S.C. § 1692(e), Plaintiff and Class members have a statutory right to be free from abusive debt-collection practices and Plaintiff and Class members suffered concrete and particularized injury when Selene violated that right. Indeed, Selene violated Plaintiff and Class Members' substantive rights under the FDCPA through its conduct, including the false, misleading, and/or deceptive communications regarding Plaintiff and Class members' respective debts.

102.     FDCPA § 1692(f) states in pertinent part that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

103.     Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it unfairly utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

104.     Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(f) in that it falsely represented its intention to accelerate and foreclose on Plaintiff's home in an effort to induce the payment of additional funds.

105.     Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it misrepresented its intentions and presented Plaintiff and other consumers with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the IN Final Letters, or face acceleration and ultimately foreclosure.

106.    Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(f), in that it has threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

107.    Selene has attempted to collect debt in violation of 15 U.S.C. § 1692(f) by using unfair and unconscionable means, including false threats of acceleration and foreclosure.

108.    The FDCPA is meant to protect consumers from harmful or abusive debt-collection practices, such as Selene' practices described herein. Selene's use of such practices in connection with Plaintiff and Class Members' debt constitutes a concrete injury.

109.    As a direct result of Selene's actions, Plaintiff and Class Members suffered injury and were subjected to harm and/or material risks of harm.

110.    As a result of Selene's unlawful attempts to collect debt, Plaintiff and the FDCPA Class Members are entitled to actual and statutory damages, as well as their reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
**(Violations of Indiana Deceptive Consumer Sales Act, IC § 24-5-0.5, *et. seq.*)**

111. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 110 as is fully set forth herein.

112. The purposes and policies of the DCSA, I.C. § 24-5-0.5-1, are to:

(1) simplify, clarify, and modernize the law governing deceptive and unconscionable consumer sales practices;

(2) protect consumers from suppliers who commit deceptive and unconscionable consumer sales practices; and

(3) encourage the development of fair consumer sales practices.

I.C. § 24-5-0.5-1(b).

113.    The General Assembly has instructed courts to construe the DCSA liberally to promote these purposes and policies. I.C. § 24-5-0.5-1(a).

114.    Selene is a "supplier" as defined in the DCSA because it is a seller or other person who regularly engages in or solicits consumer transactions, which are defined to include sales of personal property, services, and intangibles that are primarily for a personal, familial, or household purpose, such as those at issue in this action. I.C. § 24-5-0.5-2(1)-(3).

115.    The DCSA also provides that "[a] supplier commits an unconscionable act that shall be treated the same as a deceptive act under this chapter if the supplier solicits a person to enter into a contract or agreement: … (3) in which the *price is unduly excessive*". I.C. § 24-5-0.5-10(b)

> The Indiana Deceptive Consumer Sales Act prohibits a "supplier" from committing:
>
> An unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes both implicit and explicit misrepresentations. IC § 24-5-0.5-3(a).

113. Selene is a "debt collector", which is included in the definition of a "supplier" by the IC § 24-5-0.5-2.

114. A "consumer transaction" includes the collection of or attempt to collect a debt by a debt collector. *See* IC § 24-5-0.5-2.

115. Selene acted as a "debt collector" in servicing the mortgage loans of Plaintiff and the putative Class members because their loans were in default at the time Selene obtained servicing rights. IC § 24-5-0.5-2.

116. Selene attempted to collect debt in violation of IC § 24-5-0.5-3 from Plaintiffs in that it has, *inter alia,* falsely represented that failure to immediately and completely satisfy all

arrearages would result in acceleration of their loan in contravention of Selene's specific intentions and ordinary practices.

117. Selene attempted to collect debt in violation of IC § 24-5-0.5-3, in that it used false representations and deceptive means to collect or attempt to collect the Debt and threatened action it did not intend to take.

118. Selene attempted to collect debt in violation of IC § 24-5-0.5-3, in that it utilized false threats and misleading representations regarding the amounts that consumers must pay, and when they must pay it, in order to continue to own their homes.

119. Selene attempted to collect debt in violation of IC § 24-5-0.5-3, in that it utilized false threats and misleading representations regarding the amounts that Plaintiffs must pay, and when they must pay it, for the sole purpose of coercing additional payments.

120. Selene attempted to collect debt in violation of IC § 24-5-0.5-3, in that it falsely represented its intention to accelerate and foreclose on Plaintiffs' homes in an effort to induce the payment of additional funds.

121. Selene attempted to collect debt in violation of IC § 24-5-0.5-3 in that it misrepresented its intentions and presented Plaintiffs with a false ultimatum that they must satisfy all arrearages within the false deadline identified in the Final Letters, or face acceleration and ultimately foreclosure.

122. Selene has attempted to collect debt in violation of IC § 24-5-0.5-3 in that it threatened to take action, including acceleration and foreclosure, when it had no intention of taking such measures.

123. Selene has attempted to collect debt in violation of IC § 24-5-0.5-3 by using unfair and unconscionable means, including empty threats of acceleration and foreclosure.

124.    Selene committed a deceptive act where it did not comply with the FDCPA and thus violated IC § 24-5-0.5-3(b)(20).

125.    Selene *omitted* that it would not take action, including acceleration and foreclosure, when it had no intention of taking such measures in violation of IC § 24-5-0.5-3(a).

126.    Selene's conduct constituted an incurable deceptive act because it was done as part of a scheme, artifice, or device, with the intent to defraud or mislead.

127.    Selene's unfair and deceptive acts were willful.

128.    Selene's acts were formulated and carried out for the purpose of increasing its profits at the expense of consumers.

129.    The DCSA provides that "[a] person relying upon an . . . incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act or five hundred dollars ($500), whichever is greater.

130.    The court may increase damages for a willful deceptive act in an amount that does not exceed the greater of: (1) three (3) times the actual damages of the consumer suffering the loss; or (2) one thousand dollars ($1,000)." I.C. § 24-5-0.5-4(a).

131.    The DCSA also provides that "[a]ny person who is entitled to bring an action under subsection (a) on the person's own behalf against a supplier for damages for a deceptive act may bring a class action against such supplier on behalf of any class of persons of which that person is a member …" I.C. § 24-5-0.5-4(b).

132.    As a result of Selene's unlawful attempts to collect debt, Plaintiff and putative class members are entitled to actual and/or statutory damages as well as their reasonable attorneys' fees and costs. IC § 24-5-0.5-4.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and all others similarly situated pray the Court for judgment as set forth below:

133.    Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as class representative, and appointing the undersigned as class counsel;

134.    Declaring that Selene has violated the FDCPA and the DCSA in the ways alleged in this Amended Class Action Complaint;

135.    Enjoining further violations of these statutes by Selene and its agents and employees;

136.    Awarding Plaintiff and the Class actual and statutory damages for all causes of action;

137.    Awarding Plaintiff and the Class their reasonable attorneys' fees and costs;

138.    Ordering that the costs of this action be taxed to Selene; and,

139.    Providing such other and further relief as the Court deems just and proper.


Respectfully submitted this 6th day of January 2025.

By:    */s/ Ryan R. Frasher*
Ryan R. Frasher (27108-49)
**COZMYK LAW OFFICES, LLC**
450 East Street, Suite 500
Indianapolis, IN 46240
Telephone: (463)345-3475
Email: rfrasher@cozmyklaw.com

Scott C. Harris
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5000
Email: sharris@milberg.com